UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

## Case Number:  13-21069-CIV-MORENO

DAVID CALDERIN,

      Plaintiff,

vs.

ERIK H. SCHOTTENHEIMER,

      Defendant.

_____/

### ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff, David Calderin, filed suit under 42 U.S.C. § 1983, for excessive force against Defendant Officer Erik H. Schottenheimer following a 2011 shooting.  Suspecting Plaintiff to be suicidal, Officers Lowry and Schottenheimer reported to a car dealership where David Calderin was talking to his ex-girlfriend's father.   Officer Lowry confirmed that Plaintiff was in possession of a knife.  Plaintiff had the knife, which was covered and sheathed, in his hand when he was shot in the arm by Officer Schottenheimer.  Officer Schottenheimer shot Plaintiff two more times on his side and twice in his lower back.   Officer Schottenheimer is moving for summary judgment requesting the Court grant him qualified immunity.

The Court declines to grant qualified immunity as there are disputed issues of fact that preclude the Court from finding Officer Schottenheimer acted objectively reasonably.  It is unclear on this record whether Plaintiff received a warning prior to being shot, whether Defendant Schottenheimer knew Plaintiff had a knife, when Plaintiff dropped his knife, whether the knife could be confused for a revolver, what was the physical distance among the individuals present, and

whether the Plaintiff was escaping. The trier-of-fact must decide these factual issues to determine whether Defendant is entitled to qualified immunity. Moreover, the Court is reluctant to grant qualified immunity on a motion for summary judgment, especially where Plaintiff was not engaged in a violent crime at the time of the shooting and was in possession of a knife that was covered and sheathed.

THIS CAUSE came before the Court upon Defendant's Motion for Summary Judgment (D.E. No. 36), filed on **March 18, 2014**.

THE COURT has considered the motion, the response, and the pertinent portions of the record, and being otherwise fully advised in the premises, it is

ADJUDGED that the motion for summary judgment is DENIED.

### I. Factual Background

Plaintiff, David Calderin, filed suit under 42 U.S.C. § 1983 against Officer Erik H. Schottenheimer, in his individual capacity. Plaintiff is suing for excessive force and the Defendant is moving for summary judgment, citing qualified immunity.

On the morning of December 29, 2011, Plaintiff David Calderin sent a text message to his ex-girlfriend Ms. Anam Aziz. Calderin texted Ms. Aziz that he was going to see her father at his workplace, a car dealership. Calderin Depo. at 11. He texted Ms. Aziz that "if you [Ms. Aziz] call the police then I will kill myself." *Id.* at 9. Calderin testified that he was trying to get her attention, because she had been ignoring him for a couple of days. *Id.* at 10.

A day prior to the text exchange, Ms. Aziz applied for and the state court issued a temporary restraining order against Calderin. *See* Temporary Injunction for Protection Against Dating Violence at D.E. 37-4; Anam Aziz Statement at 7 (testifying temporary restraining order was not properly

2

served on Calderin). After the text exchange, she called 911 and reported to the police the substance of the text including Calderin's threat to commit suicide. Anam Aziz Statement at 10.

Calderin went to the Maroone Ford, where Mr. Aziz worked. Calderin Depo. at 27. Calderin arrived at the dealership with a 13-inch knife, which he carried in his pocket. *Id.* at 14. Calderin believed that possessing and brandishing a knife would not result in his arrest, but rather would yield him psychiatric treatment. *Id.* The police dispatch, upon receiving the 911 call from Ms. Aziz, sent Miami-Dade Police Officer Nery de Leon Lowry to the Maroone Ford dealership. Lowry Depo. at 18. Officer Schottenheimer was patrolling the area when he heard the police radio a request to respond to the Maroone Ford dealership. Schottenheimer Depo. at 30. Schottenheimer had learned that Calderin's ex-girlfriend received a text from Calderin, telling her he was going to her father's workplace and if she called the police, he would commit suicide. *Id.* at 32.

Upon Officer Lowry's arrival, she got out of her marked police car and walked around the area to locate Calderin and found him with Mr. Aziz outside the dealership. Lowry Depo. at 24. Officer Lowry testified that Calderin appeared sad, disappointed, and hopeless, while Mr. Aziz appeared angry. Lowry Depo. at 24-26. She heard Mr. Aziz tell Calderin: "it's over, it's done with, just forget about it." *Id.* at 29. Calderin added that Mr. Aziz informed him that his daughter had an arranged marriage in six months time. Calderin Depo. at 182. Calderin and his brother-in-law, Brian Castano, who was waiting for him inside the dealership, testified that Calderin and Mr. Aziz wrapped up their conversation with a hug, when a female officer approached. *Id.* at 184; Castano Statement at 11. Officer Schottenheimer approached the scene and testified that no one at the scene, Mr. Aziz, Calderin, or Officer Lowry, appeared frightened or agitated; in his view, they exhibited no emotions. Schottenheimer Depo. at 39.

Officer Lowry approached the scene and asked "Are you David Calderin?" and he responded affirmatively.  Calderin Depo. at 176; Lowry Depo. at 29-31.  Officer Lowry proceeded to ask Calderin if he had any weapons.  Calderin Depo. at 183.  Calderin said he had a knife in his pocket.  *Id.* at 183, 198. Officer Lowry radioed in that Calderin had a knife.  *Id.* at 188.  Officer Lowry also announced "very loudly" that Calderin had a knife.  Lowry Depo. at 44.  According to Officer Schottenheimer, he did not hear Officer Lowry say Calderin had a knife.  *Id.* at 43.

Officer Lowry then told Calderin to put his hands over his head – a command Calderin disobeyed.  After receiving the command, Calderin said "instead of me putting my hands above my head, that's when I grabbed the knife." *Id.* at 183.  Officer Lowry testified that she did not know the weapon was a knife until Calderin pulled it out and raised his hands, at which point he said he had a knife.  Lowry Depo. at 33, 37.  Calderin waited about ten seconds and when he saw Officer Lowry reaching for her handcuffs, he decided to take out his knife. Calderin Depo. at 188, 201. Three seconds after taking out the knife, Calderin was shot in the arm and dropped the knife to the floor.  *Id.* at 183, 203.  The knife was covered and sheathed when he was shot.  *Id.* at 188, 194.  Calderin said he was able to easily grab the knife out of his pocket; he had just lost twenty pounds from his weight of 325 pounds and the pants were baggy. *Id.* at 192.  Officer Schottenheimer believed Calderin was taking a revolver out of his pants, because the handle looked like that of a revolver.  Schottenheimer Depo. at 41.

After getting shot in the arm, Calderin turned his "back at both of them, I turned my back on the female officer and I turned my back on Schottenheimer. I took like three quick steps and then I noticed that I was getting shot in my back." Calderin Depo. at 203. "I got shot once, I took another step.  I got shot again, I took another step and then the third shot that's what made me buckle and

fall my face first to the floor." *Id.* at 205. In total, Calderin said he was shot four times, once in the arm and three times in the back. *Id.* at 216. Officer Schottenheimer admits to shooting Plaintiff five times – shot one in the arm, shots two and three on his side, and shots four and five in Plaintiff's lower back. Schottenheimer Depo. at 54-56.

Calderin said he dropped the knife to the ground after the first shot. *Id.* at 205. Schottenheimer, on the other hand, said the knife did not fall to the ground until after Plaintiff fell, i.e. after the fifth gunshot. Schottenheimer Depo. at 60. After the first shot, Calderin explained he turned around to try to escape the shooting. Calderin Depo. at 206.

When he was first shot, Calderin said he was about 10-12 feet from Officer Lowry and about 30 feet from Officer Schottenheimer. Calderin Depo. at 186, 195. Officer Schottenheimer testified his distance was 15-18 feet and Officer Lowry's was 7-8 feet from Calderin. Schottenheimer Depo. at 38. Both Calderin and Officer Lowry testified there was no one else there at the time of the shooting. Lowry Depo. at 41. Officer Schottenheimer, however, said that Mr. Aziz was still present and closer to Calderin. Schottenheimer Depo. at 40.

According to Calderin, he did not hear Officer Schottenheimer warn him before shooting. *Id.* at 196. Officer Schottenheimer, however, claims that he twice warned Calderin to get to the ground. Schottenheimer Depo. at 38. At this point, Castano heard Officer Schottenheimer say "get down on the ground." Castano Statement at 12. Officer Lowry could only remember that Officer Schottenheimer gave a loud command, but could not recall what the command was. Lowry Depo. at 45. She added: "I was the first one there. I guess because I'm a female he was just more – he was compliant with me. I don't know – I don't know what changed. He was compliant with me. I don't know why, you know, another command was needed." *Id.* at 64-65. After the shooting, Calderin

testified that the officers came up to him as he lay on the ground.  He heard Officer Lowry saying "I just finished radioing you that he has a knife, why did you shoot him, you didn't have to shoot him . . . ." *Id.* at 208.  Officer Lowry does not recall what she said to Calderin. *Id.* at 59.  The Miami-Dade Police Department classified the Plaintiff's conduct as a misdemeanor for carrying a concealed weapon under Florida Statute § 790.01.

## II. Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A factual dispute alone is not enough to defeat a properly pled motion for summary judgment; only the existence of a genuine issue of material fact will preclude a grant of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996). A fact is material if it may affect the outcome of the suit under the governing law. *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997).

The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. *Hickson Corp. v. N. Crossarm Co., Inc.*, 357 F.3d 1256, 1260 (11th Cir. 2004) (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "When a moving party has discharged its burden, the non-moving party must then 'go beyond the pleadings,' and by its own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593–94 (11th Cir. 1995) (*citing Celotex*, 477 U.S. at 324). The party opposing summary judgment make a sufficient showing to establish the

existence of an essential element in that party's case, on which that party will bear the burden of proof at trial. *Celotex Corp.,* 477 U.S. at 323-24. If the nonmovant fails to adduce evidence which would be sufficient, when viewed in a light most favorable to the nonmovant, to support a jury finding for the nonmovant, summary judgment may be granted. *Anderson,* 477 U.S. at 254-55. The burden on the nonmoving party is substantial: "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Id.* at 247-48. As such, the nonmoving party "must provide more than a mere scintilla of evidence to survive a motion for judgment as a matter of law." *Combs vs. Plantation Patterns*, 106 F.3d 1519, 1526 (11th Cir. 1997).

### III. Legal Analysis

The Court begins the qualified immunity analysis with the question of whether Officer Schottenheimer's conduct violated the Fourth Amendment. *Pearson v. Callahan*, 555 U.S. 223, 236 (2008) (holding the *Saucier v. Katz*, 533 U.S. 194, 200 (2001) framework should not be regarded as an inflexible requirement). A claim that law-enforcement officers used excessive force to effect a seizure is governed by the Fourth Amendment's "reasonableness" standard. *See Graham v. Connor*, 490 U.S. 386 (1989); *Tennessee v. Garner*, 471 U.S. 1 (1985). The inquiry requires analyzing the totality of the circumstances. *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2020 (2014).

Whether an officer's decision to use deadly force is reasonable depends upon the surrounding circumstances. *Jean-Baptiste v. Gutierrez*, 627 F.3d 816, 821 (11th Cir. 2010). And those circumstances must be viewed from the perspective of the law enforcement officer. *Id.*; *Garczynski v. Bradshaw*, 573 F.3d 1158 (11th Cir. 2009). "The 'reasonableness' inquiry in an excessive force

case is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them." *Garczynski*, 573 F.3d at 1166-67 (quoting *Graham*, 490 U.S. at 397). The Court is mindful that "police officers are often forced to make split-second judgments -- in circumstances that are tense, uncertain, and rapidly evolving -- about the amount of force that is necessary in a particular situation." *Id.* (quoting *Graham*, 490 U.S. at 396-97).

An officer need only have arguable probable cause, not actual probable cause, to qualify for immunity from a Fourth Amendment claim. *Id.* Regardless of whether probable cause actually existed, an officer is entitled to immunity if he "reasonably could have believed that probable cause existed, in light of the information the officer possessed." *Id.* (quoting *Montoute v. Carr*, 114 F.3d 181, 184 (11th Cir. 1997)). The Eleventh Circuit in *Acoff v. Abston, J.T.*, 762 F.2d 1543, 1547 (11th Cir. 1985) delineated the *Garner* standard as follows:

> The *Garner* standard contains three elements. First, an officer must have probable cause to believe that the suspect poses a threat of serious physical harm to the officer or to others. Probable cause of this sort exists where the suspect actually threatens the officer with a weapon or where there is probable cause to believe that the suspect has committed a crime involving the infliction or threatened infliction of serious physical harm. Second, deadly force must be necessary to prevent escape. Third, the officer must give some warning regarding the possible use of deadly force whenever feasible.

*Acoff*, 762 F.2d at 1547; *Pruitt v. City of Montgomery*, 771 F.2d 1475, 1482 (1985).

Again, the Court notes that reasonableness is to be determined by "balanc[ing] the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *Garner*, 471 U.S. at 8. In conducting this

balancing test, the Court must consider the "scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." *Gilmere v. City of Atlanta, Georgia*, 774 F.2d 1495, 1502 (11th Cir. 1985) (quoting *Bell v. Wolfish*, 441 U.S. 520 (1979)) (abrogated on other grounds *Graham*, 490 U.S. 386).

Reviewing the facts from the perspective of a reasonable police officer, the Court cannot say that Officer Schottenheimer's actions were objectively reasonable. It is undisputed that Plaintiff was not committing a felony involving the infliction or threatened infliction of serious physical harm. At most, the police officers knew he was a danger to himself. Likewise, there is no dispute that Calderin had not threatened Mr. Aziz or Officer Lowry. At the time of the shooting, Officer Lowry was the closest person to Plaintiff and she was a number of feet away from Plaintiff. It is undisputed that Officer Lowry had not yet drawn her weapon. Officer Schottenheimer was fifteen to thirty feet away from Plaintiff. Also undisputed is that Plaintiff said he had a knife -- a fact that Officer Lowry said she repeated loudly for all to hear.

There are disputed issues of fact on this record that preclude the Court from finding that Officer Schottenheimer acted objectively reasonably. It is unclear on this record whether Plaintiff received a warning from Officer Schottenheimer prior to being shot, whether Defendant knew Plaintiff had a knife, what was the distance among the individuals present, when Plaintiff dropped the knife, whether the knife could be confused for a revolver, or whether the Plaintiff was escaping. The trier-of-fact must decide these factual issues to determine whether Defendant is entitled to qualified immunity. *See Pruitt*, 771 F.2d at 1477-84 (11th Cir. 1985) (affirming summary judgment in favor of plaintiff, a nighttime burglary suspect who had been shot after he refused to obey order to stop fleeing); *Acoff*, 762 F.2d at 1548 (remanding directed verdict and holding the jury could

conclude that a warning from the defendant to the plaintiff was feasible).

Moreover, when balancing the scope of the intrusion on Plaintiff, five gunshot wounds, against the governmental interest in protecting the public, the Court cannot find at summary judgment that the balance tips in favor of the Defendant in this case. This is especially true in a case where it is undisputed that Plaintiff was not committing a crime involving the infliction or threatened infliction of serious physical harm to the public.

The Court recognizes that Officer Schottenmeier is correct that once a police officer employs the use of deadly force, he is justified to continue firing to end a severe threat to public safety. *Plumhoff*, 134 S. Ct. at 2022. Unlike *Plumhoff*, the Court does not find the record supports a holding at summary judgment that Calderin's "flight" posed a grave risk to public safety. Again, Calderin had not been committing a crime involving the infliction or threatened infliction of serious physical harm and his flight consisted of only a few steps in the opposite direction. *Cf. Jean-Baptiste*, 627 F.3d at 822 (holding an officer need not interrupt a volley of bullets in a case where the plaintiff was armed with a revolver and had committed an armed robbery). Accordingly, the Court declines to grant summary judgment on qualified immunity and finds it is a question for the jury.

DONE AND ORDERED in Chambers at Miami, Florida, this 27 day of June, 2014.

FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

Copies provided to:

Counsel of Record

10